UNITED STATES of America,
Plaintiff–Appellee,

v.

Robert Keith ROSS,
Defendant–Appellant.

UNITED STATES of America,
Plaintiff–Appellee,

v.

Richard Kevin SILVER,
Defendant–Appellant.

Nos. 87–5057, 87–5059.

United States Court of Appeals,
Fourth Circuit.

Argued Feb. 5, 1988.

Decided April 15, 1988.

Stephen Paul Lindsay, Asheville, N.C., for defendants-appellants.

Kenneth Davis Bell (Thomas J. Ashcraft, U.S. Atty., Jerry W. Miller, Asst. U.S. Atty., Asheville, N.C., Cenie E. Alexander, Paralegal Specialist, on brief), for plaintiff-appellee.

Before RUSSELL, PHILLIPS and CHAPMAN, Circuit Judges.

CHAPMAN, Circuit Judge:

This appeal presents the question of whether a black and white photocopy of the face of a United States one dollar bill when inserted into a coin change machine to obtain United States coins is "a counterfeit obligation of the United States" within the purview of Title 18 Sections 471[1] and 472[2] of the United States Code. We conclude that such a crude reproduction of only one side of a bill is not counterfeit, and we reverse the appellants' convictions.

## I

Following a stakeout of a car wash in Morganton, North Carolina, appellants were apprehended while obtaining coins from a coin change machine by use of a black and white photocopy of the face of a United States one dollar bill. Appellant Ross was indicted and convicted of making counterfeit obligations of the United States with intent to defraud, in violation of 18 U.S.C. § 471; of uttering and publishing falsely made, forged and counterfeited obligations of the United States in violation of 18 U.S.C. § 472; and of possessing falsely made, forged and counterfeited obligations of the United States, also in violation of 18 U.S.C. § 472. Appellant Silver was convicted only of uttering and publishing counterfeited obligations of the United States and possession of counterfeited obligations of the United States, both in violation of 18 U.S.C. § 472.

Appellants appeal claiming error by the district court in not granting their motions for judgment of acquittal, and in failing to charge the jury that the mere fact that a change machine responded to certain office machine copy reproductions of the face of a one dollar bill was not conclusive evidence that these bills were counterfeit within the meaning of 18 U.S.C. §§ 471 and 472, and in failing to instruct the jury that the appellants could be found guilty of a misdemeanor, lesser included offense, under 18 U.S.C. § 491.[3]

1. 18 U.S.C. § 471 Obligations or securities of the United States.

Whoever, with intent to defraud, falsely makes, forges, counterfeits, or alters any obligation or other security of the United States, shall be fined not more than $5000 or imprisoned not more than fifteen years, or both.

2. 18 U.S.C. Section 472 Uttering counterfeit obligations or securities.

Whoever, with intent to defraud, passes, utters, publishes, or sells, or attempts to pass, utter, publish, or sell, or with like intent brings into the United States or keeps in possession or conceals any falsely made, forged, counterfeited, or altered obligation or other security of the United States, shall be fined not more than $5000 or imprisoned not more than fifteen years, or both.

3. 18 U.S.C. Section 491 Tokens or paper money used as money.

(In pertinent part provides)

(a) Whoever, being 18 years of age or over, not lawfully authorized, makes, issues, or passes any coin, card, token, or device in metal, ... intended to be used as money, or whoever, being 18 years of age or over, with intent to defraud, makes, utters, inserts, or uses any card, token, slug, disk, device, paper, or other thing similar in size and shape to any of the lawful coins or other currency of the United States, ... to procure anything of value, or the use or enjoyment of any property or service from any automatic merchandise vending machine, postage-stamp machine, turnstile, fare box, coin box telephone, parking meter or other lawful receptacle, depository, or contrivance designed to receive or to be operated by lawful coins or other currency of the United States, shall be fined not

## II

Every government witness who testified regarding the quality of the photocopied bills admitted that the bills were obviously false and bogus. One of the arresting officers testified that when he first observed the defendants inserting the photocopy of the bill into the coin change machine, he was one hundred feet away and could tell from the white color of the paper that it was not a real U.S. one dollar bill. The merchants who testified stated that the bills were obviously fake and that no reasonable person would be confused by them. The paper on which the photocopy of the face of the U.S. one dollar bill appeared was of very poor quality, but the witnesses testified it was not necessary to feel the paper to know that the bill was fake.

In *United States v. Smith,* 318 F.2d 94 (4th Cir.1963) Judge Bryan found that for a conviction under 18 U.S.C. § 472 there must be "a counterfeit obligation of the United States" and that for something to be counterfeit it must be an imitation or "similitude".

The *Smith* court found:

Two imprinted paper slips were adduced in evidence to prove the charge, but we do not think they support the indispensable allegation of a 'counterfeited obligation of the United States', for they have too little likeness to the genuine.

In our view, no consideration need be given the questions raised in the District Court of the legality of the seizure of the slips or the intent requisite under the statute. The papers were found in Smith's automobile along with other paraphernalia, all of which he admits were used in a confidence or 'flim-flam' game —the scheme involved the sale of the machine to make money. The mechanics of it, as explained by the Government agent, would ordinarily have consisted of spreading a fluid of some kind on the face of the genuine paper currency to soften the ink and pressing the wet currency upon blank paper, thus leaving on

more than $1,000, or imprisoned not more than

the paper a reversed impression of the bill. This process would in turn be followed with the other side of the bill. These negatives would then be employed to produce positive copies of paper money. Cf. *Webb v. United States,* 216 F.2d 151 (6th Cir.1954).

The slips in evidence are seemingly a step in this method of reproduction. Each is the size of a $10.00 Federal Reserve Note, representing respectively the obverse and the reverse sides of the note. The back of each slip is entirely blank. The two slips had noc been pasted together and did not give the appearance of a single bill. The facsimile signatures, pictures, figures, words of amount or other symbols are quite faint and, most significant, all of them read backwards.

The prosecution stresses that only two elements must be established to convict:

(1) Possession and

(2) Intent to defraud the United States or, indeed, anyone. But this argument assumes the indispensable basis of the offense, a 'counterfeited obligation of the Untied States'. 'Counterfeited' means imitated, simulated, feigned or pretended. 2 Oxford Distionary 1066 (1933 ed.). The very word connotes a similitude, without which there is no counterfeit. Here the slips do not have the appearance of an obligation of the United States. There is scarcely a resemblance, much less an imitation. They are just too crude to mislead—an undisguised and rude forgery. The quality of the paper alone proclaims them spurious. Hence they are not 'counterfeited' in fact.

Nor in law do these articles amount to counterfeits, for they are not of such falsity in purport as to fool an 'honest, sensible and unsuspecting person of ordinary observation and care.' *United States v. Lustig,* 159 F.2d 798, 802 (3rd Cir.1947), rev'd on other grounds, 338 U.S. 74, 69 S.Ct. 1372, 93 L.Ed. 1819 (1949); *United States v. Weber,* 210 F. 973, 976 (W.D.Wash.1913).

one year, or both.

Our conclusion is reached solely upon the slips in evidence here and the statute on which the indictment was found. These features distinguish this case from decisions involving articles found in fact to be similar to an obligation of the United States, or decisions based on other though related statutes, e.g. *Webb v. United States, supra,* 216 F.2d 151 and *United States v. Lustig, supra,* 159 F.2d 798. In this connection it is to be emphasized that the instant statute, so far as it is now before us, denounces possession of a counterfeited obligation—not the possession of means of counterfeiting nor the act of counterfeiting.

*Smith,* 318 F.2d at 94–95.

There is no evidence in this record that these photo copies of the face of a one dollar bill deceived anyone into believing that they were genuine, and every witness who testified as to the quality and appearance of the paper concluded that they were fake. Moreover, according to Officer Bauer, this fakery was obvious from a distance of one hundred feet. The Government argues that it is for the jury to decide whether these photocopies had the requisite resemblance to real bills to violate the statute, but there is no evidence that would support such a finding because no one was fooled. The copies contained in the record speak for themselves. They are patently fake and cannot fool "an honest, sensible and unsuspecting person of ordinary observation and care."

Judge Bryan's opinion in *Smith* has been widely cited and followed. *See United States v. Johnson,* 434 F.2d 827 (9th Cir. 1970); *United States v. Chodor,* 479 F.2d 661, 664 (1st Cir.1973), *cert. denied* 414 U.S. 912, 94 S.Ct. 254, 38 L.Ed.2d 151 (1973); *United States v. Moreno–Pulido,* 695 F.2d 1141 (9th Cir.1983); *United States v. Hall,* 801 F.2d 356 (8th Cir.1986). The *Smith* definition of counterfeit, with only minor modifications, is the approved definition found in Federal Jury Practice and Instructions, 3rd Ed., Devitt & Blackmar, § 52.10 which provides:

An item is 'counterfeit' if it bears such a likeness or a resemblance to a genuine obligation or security issued under the authority of the United States as is calculated to deceive an honest, sensible and unsuspecting person of ordinary observation and care dealing with a person supposed to be honest and upright.

The government relies upon *United States v. Turner,* 586 F.2d 395 (5th Cir. 1978), but we find it unpersuasive. *Turner* was prosecuted under 18 U.S.C. § 474, which reads in pertinent part:

Whoever has in his possession or custody, except under authority from the Secretary of the Treasurer or other proper officer, any obligation or other security made or executed, *in whole or in part,* after the similitude of any obligation or other security issued under the authority of the United States, with the intent to sell or otherwise use the same; ...

Shall be fined not more than $5,000 or imprisoned not more than 15 years, or both. (emphasis supplied).

*Turner* involved the use of bogus bills in the form of photo copies of the face of genuine one dollar bill on black and white paper and used to obtain change from a change-making machine. The language of § 474 is quite different from that found in §§ 471 and 472, and the *Turner* court relied upon the language of § 474 "made or executed, in whole or *in part,* after the similitude" (emphasis in the original). *Id.* at 398. There is no reference in §§ 471 or 472 to an "in part similitude".

We are also concerned by the language in *Turner* which explained that the photo copies had been successful in obtaining change from the change-making machines and then stated "thus the photo-copies involved here have unequivocally demonstrated their dangerousness." *Id.* at 398. We are not aware of any authority that brings "dangerousness" into the definition of counterfeit.

Although *Smith* involved a "counterfeited obligation of the United States" under 18 U.S.C. § 472, its definition of "counterfeit" would apply equally to 18 U.S.C. § 471.

### III

From a review of the United States Code sections dealing with counterfeiting, it is

obvious that Congress enacted 18 U.S.C. § 491 to redress the actions taken by the defendants in the present case. It refers to the use of any "paper, or other thing similar in size and shape to any of the lawful coins or other currency of the United States, . . . to procure anything of value, . . . from any . . . lawful receptacle, depository, or contrivance designed to receive or to be operated by lawful coins or other currency of the United States." However, if the prosecutor wishes to seek a more severe penalty, he may proceed under 18 U.S.C. § 474 as was done in *United States v. Turner, supra.*

The poor quality photocopies of the one dollar bills in this case are simply not "counterfeit", but they are similar to slugs or other objects that can be used to operate automatic vending equipment and to procure something of value—coins in the present case.

### IV

Since we have determined that the appellants should not have been prosecuted under either 18 U.S.C. § 471 or 472 we do not reach the question of whether 18 U.S.C. § 491 is a lesser included offense of the aforementioned sections.

*REVERSED.*